# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32391**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Daniel A. KYC**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 May 2017

————————————

*Military Judge:* Andrew Kalavanos.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, forfeiture of $1,000.00 pay per month for 6 months, and reduction to E-1. Sentence adjudged 25 January 2016 by SpCM convened at Seymour Johnson Air Force Base, North Carolina.

*For Appellant:* Major Annie W. Morgan, USAF.

*For Appellee:* Captain Matthew L. Tusing, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, HARDING, and C. BROWN, *Appellate Military Judges.*

Judge HARDING delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge C. BROWN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty, consistent with his pleas, of four specifications under Article

112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a—specifically, both wrongful use and introduction of cocaine on divers occasions, wrongful use of hydrocodone, and wrongful possession of heroin.[1] The military judge sentenced Appellant to a bad-conduct discharge, six months of confinement, forfeiture of $1,000.00 pay per month for six months, and reduction to the grade of E-1.

Appellant raises three assignments of error: (1) the staff judge advocate's recommendation (SJAR) misadvised the convening authority of the maximum imposable punishment; (2) the SJAR failed to address an allegation of legal error raised in the clemency submission; and (3) he should be provided sentence relief for the conditions of post-trial confinement under Article 66(c), UCMJ, 10 U.S.C. § 866(c). As we find no error substantially prejudices a substantial right of Appellant, we now affirm.

## I. BACKGROUND

The SJAR for this special court-martial advised the convening authority that "[t]he maximum imposable sentence for the offenses for which the accused was convicted is reduction to E-1, two-thirds forfeiture of pay per month for 12 months, *hard labor without confinement for 3 months, restriction for two months, a fine,* a reprimand, confinement for 12 months, and a bad conduct discharge." (Emphasis added). The SJAR also provided a summary of the pretrial agreement specifically detailing that, in exchange for Appellant's guilty plea, "confinement would be limited to 6 months if a bad conduct discharge was adjudged, and no more than 8 months confinement if a bad conduct discharge was not adjudged."

Appellant's clemency matters consisted of a memorandum from his defense counsel, Appellant's hand-written submission entitled "Living Conditions," and a copy of a book review about the psychological impacts of incarceration. Appellant's counsel requested Appellant be "let out of jail early" in recognition of his cooperation in the prosecution of other Airmen involved in the drug offenses. His defense counsel also averred that Appellant "was incarcerated in a state facility with shoddy conditions" and that counsel "couldn't even talk to him without someone else in the room." Appellant, in his hand-written submission, requested that the convening authority "relieve some time off [his] sentence for living in these poor conditions here at the Sampson County Detention

---

[1] The convening authority agreed to dismiss with prejudice a specification alleging distribution of cocaine.

Center." The clemency matters did not allege that the SJAR had provided erroneous advice regarding the maximum punishment. Nor did the matters specifically allege that the conditions of post-trial confinement violated the Eighth Amendment,[2] Article 55, UCMJ, 10 U.S.C. § 855, or otherwise expressly allege that the conditions of post-trial confinement constituted legal error for which Appellant was due relief.

Appellant's clemency matters were attached to an addendum to the SJAR advising the convening authority that he must consider them prior to taking action. The addendum also provided that the staff judge advocate (SJA) had reviewed Appellant's clemency matters and that her "earlier recommendation remain[ed] unchanged." She recommended that the convening authority approve the findings and sentence as adjudged. In his indorsement to the SJAR addendum, the convening authority indicated that he had considered Appellant's clemency matters before taking action in the case.

## II. DISCUSSION

### A. The Staff Judge Advocate's Recommendation and Addendum

Although he did not allege error during the post-trial processing of his case, Appellant now alleges the SJA gave erroneous legal advice when the convening authority was instructed on the maximum punishment and that the addendum to the SJAR failed to address an allegation of legal error in Appellant's clemency submission. Appellant requests that we order new post-trial processing in his case. We decline to do so.

We review de novo alleged errors in post-trial processing. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000); *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least "some colorable showing of possible prejudice." *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65).

Failure to timely comment on matters in the SJAR or addendum, to include matters attached to it, forfeits the issue unless there is plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *Scalo*, 60 M.J. at 436. Under a plain error analysis, the appellant bears the burden of showing: (1) there was an error, (2) it was plain or obvious, and (3) the error materially prejudiced a substantial right of the appellant. *Kho*, 54 M.J. at 65.

---

[2] U.S. CONST. amend. VIII

### 1. Erroneous Advisement of Maximum Imposable Sentence

The Government readily concedes that the SJAR mistakenly stated that, *in addition* to confinement of 12 months, the maximum imposable sentence also included "hard labor without confinement for 3 months and restriction for 2 months." We agree. While, indeed, confinement for up to 12 months, restriction for up to two months and hard labor without confinement for up to three months were each authorized punishments, they could not, when aggregated and applying equivalency standards, exceed the total maximum authorized period of confinement—here, 12 months. R.C.M. 1003(b)(5)-(6). The SJAR's failure to acknowledge this limitation was plain or obvious error. Although not raised by Appellant, we note a similar error in the SJAR with regard to a fine as part of the maximum imposable sentence in addition to forfeiture of two-thirds' pay per month for 12 months.[3] This was also a plain and obvious error.

Yet finding error does not end our inquiry, as Appellant must still demonstrate a colorable showing of possible prejudice to prevail. Whether an appellant was prejudiced by a mistake in the SJAR generally requires a court to consider whether the convening authority "plausibly may have taken action more favorable to" the appellant had he or she been provided accurate or more complete information. *United States v. Johnson*, 26 M.J. 686, 689 (A.C.M.R. 1988), *aff'd*, 28 M.J. 452 (C.M.A. 1989); *see also United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). Having reviewed the record in this case, we find Appellant has not met his burden of establishing prejudice.

Appellant avers that when deciding to grant clemency, the convening authority "should take the true maximum punishment into account" and that in this case "there is a colorable argument that the convening authority did not grant clemency because he believed Appellant's crimes to warrant more severe punishment than authorized." While we agree that the correct maximum punishment is an appropriate factor to be considered and the SJA has an obligation to ensure the accuracy of the matters in her SJAR, the overstatement of the maximum imposable punishment in this case was relatively minor. Even applying the lower standard, we find it implausible that a mistaken belief regarding aggregation of forms of restraint and forfeitures and fines would have caused the convening authority to conclude the offenses were more serious.

We further note that the convening authority had already made two decisions, both in favor of Appellant, requiring him to consider the seriousness of

---

[3] Any combination of a fine and forfeitures may not exceed the total amount of forfeiture that may be adjudged—here, forfeiture of two-thirds' pay per month for 12 months. R.C.M. 1003(b)(3).

Appellant's offenses. First, the convening authority made a disposition decision on both the Charge and its three specifications and the Additional Charge and its two specifications. The maximum sentence to confinement based on the charges that had been preferred without regard to the type of court-martial was 35 years. The convening authority decided to refer all the charges and specifications to a special court-martial instead of ordering an Article 32, UCMJ, 10 U.S.C. § 832, preliminary hearing with a view toward recommending a general court-martial. Second, as part of the pretrial agreement, the convening authority agreed to dismiss with prejudice a specification alleging distribution of cocaine and also agreed to limit the amount of confinement he would approve if confinement was adjudged. In both instances the convening authority would have necessarily become familiar with the circumstances surrounding Appellant's offenses and the possible sentencing outcomes in the case given the referral to a special court-martial and the pretrial agreement. We do not believe the misstatement of the maximum imposable punishment in the SJAR effected a significant shift in how the convening authority viewed the seriousness of Appellant's offenses or affected Appellant's chances for clemency. As we are confident that stating the proper maximum imposable sentence would not have led to a more favorable recommendation by the SJA or clemency by the convening authority, we find no colorable showing of prejudice in this case.

### 2. Failure to Address Allegation of Legal Error in the Addendum

Appellant next alleges the addendum to the SJAR failed to adequately address an allegation of legal error regarding the conditions of his post-trial confinement. Appellant asserts that having mentioned poor confinement conditions in his clemency submission, the SJA erred in not advising the convening authority whether corrective action was necessary as required by R.C.M. 1106(d)(4). We disagree.

The SJA is not required to examine the record for legal errors; however, among the various required contents of the SJAR is the requirement that "[t]he staff judge advocate shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate." R.C.M. 1106(d)(4). As we said in *United States v. Branch,* No. ACM S31691, 2010 CCA LEXIS 403, at *5 (A.F. Ct. Crim. App. 13 Dec. 2010), "[t]he threshold question is whether the appellant raised legal error in his clemency submissions." While Appellant did generally describe the conditions of the state confinement facility as "shoddy" and "poor," nowhere in his matters does he cite those as evidence of a violation of the Eighth Amendment or Article 55, UCMJ, or otherwise expressly allege that the conditions of post-trial confinement constituted legal

error for which he was due relief. Instead, those conditions were marshalled as a matter in mitigation in support of a plea that Appellant receive clemency in the form of time off his sentence to confinement. We conclude that Appellant's claims did not amount to an allegation of legal error and thus the SJA was not obliged to address it.

Assuming arguendo that Appellant's post-trial claims were enough to raise legal error regarding the conditions of post-trial confinement, the SJA's response in the SJAR addendum was adequate to address it. In addressing whether corrective action should be taken because of legal error, R.C.M. 1006 does not require an extensive response from the SJA. "The response may consist of a statement of agreement or disagreement with matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required." R.C.M. 1106(d)(4).

Here, the SJA did not specifically say whether corrective action was necessary. She did state, however, that she had considered the clemency submission and her original recommendation remained unchanged. In a similar case, *United States v. Catrett*, 55 M.J. 400, 408 (C.A.A.F. 2001), our superior court found that the statement "[n]othing contained in the defense submissions warrants further modification of the opinions and recommendations expressed in the Staff Judge Advocate's Recommendations" met the minimal response required by R.C.M. 1106(d)(4). We find the statement in the SJA's addendum meets the minimum requirements.

## B. Post-Trial Confinement Conditions and Sentence Appropriateness

Appellant now raises the issue of post-trial confinement conditions with this court. Appellant does not argue that the conditions of his post-trial confinement violated the Eighth Amendment or Article 55, UCMJ. Instead, he urges this court to exercise its authority under Article 66(c), UCMJ, to provide sentence relief for the conditions of post-trial confinement. Having reviewed the entire record, we decline to do so.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ. In determining whether a sentence should be approved, our authority is "not legality alone, but legality limited by appropriateness." *United States v. Nerad*, 69 M.J. 138, 141 (C.A.A.F. 2010) (quoting *United States v. Atkins*, 23 C.M.R. 301, 303 (C.M.A. 1957)). This authority is "a sweeping congressional mandate to ensure a fair and just punishment for every accused." *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (quoting *United States v. Bauerbach*, 55 M.J. 501, 504 (Army Ct. Crim. App. 2001)). This task requires "'individualized consideration'

of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). In conducting this review, we must also be sensitive to considerations of uniformity and evenhandedness. *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *United States v. Lacy*, 50 M.J. 286, 287–88 (C.A.A.F. 1999)).

As a threshold matter in this case, where the claim for sentence appropriateness relief relies upon a claim of poor post-trial confinement conditions, the Government urges we hold that, absent unusual or egregious circumstances, failure to exhaust administrative remedies[4] is a bar to Article 66(c), UCMJ, consideration. To be sure, imposition of a requirement that an appellant exhaust administrative remedies before petitioning for relief under Article 66(c), UCMJ, for post-trial confinement conditions would promote a system where the government would be able to promptly investigate confinement condition allegations, document the conditions as they actually exist, and immediately address them if necessary. Not only would such a system encourage the timely correction of inadequate confinement conditions, it would result in a more complete record for appellate review.

Such a requirement, however, runs counter to the essential Article 66(c), UCMJ, inquiry of "appropriateness in light of all circumstances" wherein "no single predicate criteria . . . should be erected to foreclose application of . . . consideration or relief." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Under Article 66(c), UCMJ, our sentence appropriateness authority is to be based on our review of the "entire record," which necessarily includes the appellant's allegation of the conditions of his post-trial confinement. *See United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000) (noting that matters submitted to the convening authority for clemency purposes are available to this court to aid us in determining the appropriateness

---

[4] For claims of an Eighth Amendment or Article 55, UCMJ, violation, "a prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (citing *United States v. White,* 54 M.J. 469, 472 (C.A.A.F. 2001)); *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997) (quoting *United States v. Coffey*, 38 M.J. 290, 291 (C.M.A. 1993)). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Wise,* 64 M.J. at 471 (citing *Miller*, 46 M.J. at 250). In *United States v. McPhearson*, 73 M.J. 393, 397 (C.A.A.F. 2014), this exhaustion-of-remedies requirement was made applicable to claims brought under Article 12, UCMJ for violation on prohibition of placement in confinement in immediate association with enemy prisoners or other foreign nationals who are not members of the armed forces.

of a sentence). "While we may not engage in acts of clemency, . . . we may consider post-trial confinement conditions as part of our overall sentence appropriateness determination, even where those allegations do not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation." *United States v. Gay*, 74 M.J. 736, 741 (A.F. Ct. Crim. App. 2015), *aff'd*, *United States v. Gay*, 75 M.J. 264 (C.A.A.F. 2016). We are also mindful our superior court has emphasized the Courts of Criminal Appeals do not have "unlimited authority . . . to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Gay*, 75 M.J. at 269. Given these parameters, we have previously noted we will likely only exercise our Article 66(c) authority to grant sentence relief based upon conditions of post-trial confinement in very rare circumstances. *See United States v. Stortz*, No. ACM S32377, 2017 CCA LEXIS 266 (A.F. Ct. Crim. App. 17 Apr. 2017), *United States v. Milner*, No. ACM S32338, 2017 CCA LEXIS 84 (A.F. Ct. Crim. App. 7 Feb. 2017) (unpub. op.)

We therefore decline to hold that an appellant must demonstrate that he has, absent unusual or egregious circumstances, previously exhausted administrative remedies prior to seeking judicial relief under Article 66(c), UCMJ for post-trial confinement conditions. We will instead consider the entire record, to include Appellant's failure to exhaust administrative remedies, while recognizing the limits of our authority.

We now turn to consideration of the matters raised by Appellant.

Appellant argues on appeal that this court should grant sentence relief due to being deprived of basic hygiene and unmonitored access to his attorney at the Sampson County Detention Center.[5] Appellant did not provide an affidavit in support of his claim but relies on his clemency matters. In his submission to the convening authority entitled "Living Conditions," Appellant provided the following description of his experience at the Sampson County Detention Center:

> It has been rough these past few weeks being in solitary confinement here at Sampson County Detention Center. I was told I would be let out of my cell every day for an hour. I have been lucky to been [sic] let out for twice a week for maybe 15 mins. In these 15 mins. I would shower and if I had time try to make a phone call. Most of my phone calls were cut short by an officer telling me to go back in my cell. I sleep on a metal frame bed with just a small cushion and no pillow. I often wake with a sore

---

[5] His defense counsel during post-trial processing also averred that Appellant "was incarcerated in a state facility with shoddy conditions" and that counsel "couldn't even talk to him without someone else in the room."

> back, hips and neck. It is hard to get to sleep due to the other inmates talking screaming, laughing, and banging the walls through the night. They wash our clothes just once a week which gets nasty when I only have one other change of clothes. Especially because I like to work out in my cell my clothes get smelly. It would be greatly appreciated if you can find it in your good graces to relieve some time off my sentence for living in these poor conditions here at Sampson County Detention Center. Thank you.

In response to Appellant's claims, the Government provided five witness declarations and an inmate disciplinary form which were attached to the record. Collectively these affidavits establish that Appellant never complained of the confinement conditions until his clemency submission by which time he had already left the Sampson County Detention Center. Specifically, Appellant did not formally pursue an Article 138, UCMJ, 10 U.S.C. § 938, complaint or avail himself of a complaint process of the facility itself. Nor did he express any concerns about the conditions to his First Sergeant who visited him at the Sampson County Detention Center on two occasions. Further, Appellant was placed in lockdown for ten days as a disciplinary measure for failing to follow orders and for lying to staff at the Sampson County Detention Center.[6]

Having given individualized consideration of Appellant on the basis of the nature and seriousness of the offenses, the character of Appellant, and the conditions of his post-trial confinement based on the entirety of the record, we decline to grant the requested relief.

## III. CONCLUSION

The approved findings are correct in law and fact, the sentence is not inappropriate, and no error materially prejudicial to Appellant's substantial rights

---

[6] In *United States v. Fagan*, 59 M.J. 238, 241–42 (C.A.A.F. 2004), our superior court determined that the framework of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), guides our determination of whether a post-trial fact-finding hearing is necessary to resolve a claim based on the conditions of post-trial punishment. Applying this framework, we find it unnecessary to remand this case for additional fact-finding. Appellant's account of his confinement conditions, as described in his clemency submission, are substantially consistent with the Government declarations concerning Appellant's treatment. To the extent there are differences between Appellant's and the Government's accounts, our resolution of those discrepancies in Appellant's favor would not result in granting Appellant relief.

occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.


FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court